Thank you, Your Honor. May it please the court, my name is Christopher Dahl for the law firm of Baker, Donaldson, Behrman, Caldwell, and Berkowitz. Despite the volume of this record, I'm sorry, I'm representing DGS Construction, LLC, which I'll refer to by their trade name Schuster during this argument. Despite the volume of this record and the complexity of the cross issues, there are really only a few core issues that matter on this appeal and only a few items of evidence that are truly material. My client's case, both in winning summary judgment and now challenging the denial of Rule 50 and unjust enrichment, is quite simple, quite straightforward. Schuster did not agree and appellees did not expect the payment of fringe benefits on overtime hours and it is not unjust for Schuster to have paid appellees at the rates set forth in the contract documents as understood by the parties. Appellees, in contrast, invite this court to follow it down a winding path, relying on an unpublished sub-regulatory opinion of an administrator at the Department of Labor without rulemaking authority, interpreting an inapplicable statute to retroactively bind Schuster to make payments it never agreed to make and which the appellees never expected to receive based on a law that was expressly disclaimed in the contract documents. I'll begin briefly at the dispositive motion stage where the district court properly granted Schuster's motion for summary judgment on the statutory wage payment claim. Distilling the facts to their most simple, Schuster was a subcontractor on a private construction project and under those contract documents agreed to pay wage rates that were derived from the wage rates adopted by the DLLR for prevailing wage cases projects. Those rates are set forth in the S-3, which for the summary judgment record is a JA-188. Importantly, while the document states those rates were derived from the DLLR wage rates, that document expressly provides that this project is not subject to state law regarding the payment of prevailing wages or the Davis-Bacon Act and on that record the district court properly found that appellees could not prove a promise by Schuster to pay sufficient to give a rise to a claim under the Maryland wage payment and collection law. The court recognized that workers were told it was a scale project and that scale was a clear reference to the section S-3 of the project manual, but that the project manual did not state that fringe benefits would be paid on each hour work to include overtime and because no other state law provided that a payment or promise to pay fringe benefits constituted a promise to pay them on overtime hours and noting even though it wasn't binding that the DLLR had itself not consistently required fringe benefit payments to be paid on those hours, the court properly granted Schuster's motion on that count and we'd ask the court to affirm as to that aspect of the cross appeal. Despite finding as a matter of law that the contract documents didn't obligate Schuster to make these payments, however, the district court did allow plaintiffs unjust enrichment claim to move forward. Again, we're not challenging that on summary judgment. Yes, your honor. Oh, I'm sorry. I was just going to say finish your thought. Sure, sure. But we highlight the error in that ruling simply because it creates context for the the entire case at that point. It didn't. I guess I am confused because you said despite the fact that the district court found the plaintiffs couldn't prevail on what's basically a contract claim. I was promised these benefits under the wage statute. It did allow them to go forward on unjust enrichment and that doesn't seem at all intention to me. I mean, isn't that the point of unjust enrichment? There isn't a contract, but there may still be an equitable claim for why the defendant should have to disgorge the money. Well, we would dispute that any party there wasn't a contract. Every party said there was a contract. The dispute was about what the terms of the contract were. Now, under Maryland law. So these plaintiffs had no enforceable promise as to these fringe benefits against Schuster. Right. But I don't think it is inconsistent with that or intention with that to say nevertheless they can proceed or in fact precisely because of that they can proceed under unjust enrichment if to see if they can make a for the defendant to keep this money rather than disgorging it. Well, again, noting that our summary judgment ruling that is not on appeal. I will respond any way that we would disagree because unjust enrichment isn't available where there is a contract and at will employment is a contract. Again, water under the bridge at this point. And secondly, that, you know, as argued throughout and now frankly clarified by a more recent opinion of the court of Maryland, the then Court of Appeals in the identically titled DGS construction LLC via Maya, the expectations of the parties very much are at issue when determining whether there's a claim for unjust enrichment in the context of an at will employment case. So the Amaya case came down during the pendency of this appeal and stated that whether workers who happen to be workers on this same project, although in the Amaya appeal, it was involving a different subcontractor that whether they had an unjust enrichment claim turned on entitlement to compensation. And we would say that entitlement compensation very much is tied up as we've argued all along with the concept of the expectation of the parties. And I think that is irreconcilable with allowing unjust enrichment to go forward, either at summary judgment, or for the purposes of this motion of this appeal, we're here today, I mean, which we're here today, the denial of the motion on Rule 50 B, to which I will now turn. The elements of enrichment are not. Yes, Your Honor. Before you move on to that, I understand your position, and I'm sympathetic to it that a breach of a contract is not a tort, just as a basic matter, and it is an odd thing to have a recovery where there has been no breach of contract. But I want to know, where has Maryland law precluded a tort claim or an unjust enrichment claim or an equitable claim where the breach of, in instances where the contract claim is not available and a statutory violation is not available? I think it's generally agreed that there's been no breach of contract here, and there's been no statutory violation. And a great many states would say, but where exactly does Maryland claim such as unjust enrichment from going forward if the elements of the claim are met? The unjust enrichment is undoubtedly available where is no contract or where there is no statutory claim. Here, there was no breach of contract claim, but that is a different proposition than there is no contract. At will employment is a contract. It is a contract terminable at will by either party throughout the duration of the case. And again, I'm now arguing, and I don't want to take the Court's time, arguing a point that is not unjust enrichment has three elements dealt forth in probably the most important case. In this case, he'll be cross-country settlements LLC to benefit conferred upon the defendant by the plaintiff, an appreciation or knowledge of the defendant of the benefit and the acceptance or retention the defendant under such circumstances to make it inequitable for the defendant to retain the benefit without the payment of its value. Beginning briefly with benefit, this was an element that we've highlighted in our papers that plaintiffs struggled to articulate below and really with good reason because the facts of this case do not look like a standard unjust enrichment case. You know, as set forth in our papers, we feel that benefit is tied up in this new notion or newly clarified notion of entitlement to compensation announced and clarified by the Court of Appeals in the Amaya case, which requires at least really to prove three assumptions. Should we read Amaya to have changed the elements or done any real work on that? You're absolutely right that it says they have this sentence about unjust enrichment also turning on the entitlement, but Amaya was deciding another issue and then it said basically this issue will affect the unjust enrichment ruling also because that also turns on an entitlement to the benefit and so we're going to send both of those claims back. And as a federal court, I'm just a little, I'm always a little cautious about how much should I read into what the state court is saying about its elements of its torts. Your Honor, we do not feel that the Amaya case changed the elements of unjust enrichment. Amaya is, however, the first articulation by a Maryland appellate that we know of at any time from the founding forward of how unjust enrichment applies in the context of at-will employment, but it doesn't change, it's not a seed change in the law. It's not. It's just a clarification. So entitlement to the benefit still means what the other, Maryland's other unjust enrichment cases say it means, that it's not, you're not trying to say this means you have to have a promise, this means you have to have some sort of enforceable agreement to have unjust enrichment. Well, we're saying that it is wrapped up in the expectations of the parties and particularly maybe I need to move on to the second element of unjust enrichment because I think that's where it ties most clearly. I'm just trying to, and you can move on, I know you have lots to talk about, but to me I thought the difference between the state law, between the statutory claim and the tort claim is the statutory claim you have to have this, you have to have a promise, you have to have, you know, that's why you looked to the written documents, but unjust enrichment allows for consideration of the more generalized understanding of the expectation of the parties, right, whether one party had been misled, it lacks, it lacks the concreteness of a promise or, I'm sorry, estoppel, those sorts of unjust enrichment takes all comers. Yes, yes, but the expectations of the parties, as your honors noted, do matter and that I do want to, as my time is running short, make sure that I address most importantly the second element of unjust enrichment, which is the appreciation or knowledge or appreciation of the receiving party of the benefit. So if we're defining the benefit as Judge Schwong ultimately did under Rule 50, yes, your honor. Was that second element on the unjust enrichment or whether they were aware that they were receiving the benefits? I mean, so many of these elements that you're talking about, I wonder whether they aren't jury questions. You seem to be wanting us to rule on them as a matter of law, but I'm just wondering, wouldn't somebody's awareness or wouldn't the expectations of the parties or the relationship of the parties and all the things that feed into unjust enrichment, aren't they factually laden to a certain extent or jury questions about what the relationship and interchange and expectations of the parties were? Why? I'm just wondering why. I mean, I'm sympathetic to what you're saying, but I'm wondering why. I'm not sure why the equitable claim is disallowed and if the equitable claim is not laden. Well, because your honor, we recognize under Rule 50, they need a fact. They need one fact to show that Schuster had knowledge or appreciation of this benefit at the time that it was conveyed or at a time that Schuster could have returned the benefit. And this is where Hill is important. The Hill case says, evidence show, I thought there was, and correct me if I'm wrong, because as you say, it's a big record, but I thought that there was a part where Schuster goes to the general contractor, Whiting-Turner, and sort of debates, do we have to pay these benefits or not? And sort of persuades Whiting-Turner that it doesn't have to pay them. Why isn't that enough to show that they were obviously aware of the benefit? They were lobbying to maintain the benefit. It shows that Schuster was aware that they didn't have to pay that benefit. No, it shows that Schuster was aware it was getting the benefit, that there was a thing in the world called fringe benefits on overtime hours, and they would prefer not to pay them, and so they got the sign-off not to pay them. They obviously knew of the benefit. The benefit was the services, and it only counts as a benefit, as Judge Huang noted, if Schuster received the benefit without paying something that it knew it was required to make. Judge Huang did not say that Maryland law would require for knowledge of the benefit that the defendant would have to know it had a legal obligation to pay the benefit. Judge Huang, I'm talking about the way that Judge Huang defined the benefit. I do need to come back to knowledge because it's very important. That question, I want to stay on the point that Judge Harris is raising about the benefit, as to whether there was awareness. Isn't that simply a jury question as to Mr. Byron or whatever the CEO's name is? Isn't it a question of his credibility? The awareness simply bottoms out on the jury's determination of the CEO's credibility as a factual matter? I'm over time. If I could respond very briefly, Your Honor. I don't think it's appropriate to use someone's denial of a fact to be able to then impeach them to prove the catcher positive. I don't think that's appropriate. I believe there's a case from the Fourth Circuit on that called Holt v. Camus, and we would rely on that. As I'm out of time, I'm going to reserve and return to the point on Hill v. Cross Country Services during this time. Thank you. All right. Mr. Pavsner? Yes, thank you, Your Honor. May it please the court, I'm Steve Pavsner, and I represent Schuster's employees who were the appellees and cross appellants in this case. As appellees, we really can't express our position any better than Judge Schwann did when he denied the appellant's Rule 50B motion and characterized the unjust enrichment claim as a question of whether, in light of all the circumstances, including the party's reasonable expectations and considerations of fairness and justice, the jury could reasonably conclude, in light of all of those circumstances, that it was unjust for Schuster to obtain a lucrative contract on the condition that it pay its workers state prevailing wage rates and lead its workers to believe that it would pay them on this project in the same way as it would pay as if this were a state prevailing wage project, and then declined to do so. The court below said that there was sufficient evidence to support the verdict and that, as we're here now, Schuster's speaking about the jury instructions and about the admission of this document we call the S-3 provide no valid basis whatsoever to overturn the jury's assessment. But the irony here, the irony, and I'd like to get right to it because of something my colleague said, we do not start from the proposition that Schuster did not agree to pay fringe benefits on overtime. The notion that there was not an enforceable promise in this case is actually the subject of our cross-appeal because, in our view, there was an enforceable promise in this case. In our view, we should have been able to proceed on unjust enrichment in the alternative. Now, is this really like a conditional cross-appeal? I mean, if you were to, I understand you're cross-appealing on the wage claim, right, which would require an enforceable promise. If you are right on that, then unjust enrichment goes away, right? You don't win on both. Absolutely. There's no question about that, Your Honor, and if this court were to allow us to proceed on the, so if this is a, I think, in effect a conditional cross-appeal, like we only reach your cross-appeal if you're wrong, if we rule for the defendant. I think that's a fair way to view it. I think that's a fair way to view it. Clearly, we cannot prevail both on a contract wage claim, on a breach promise, and on unjust enrichment. There's no dispute about that. But here's the thing. Schuster says they did not promise to pay fringe benefits on overtime, but in fact they did. Not in precise words, but in different words that mean the same thing. Schuster agreed, and there's no dispute, they say it right in their brief, they agreed to pay their employees scale wages, and they admit that they were required to, and they admit that their employees would have understood from everything they said and did that they were going to pay scale wages, and they also admit in their that they agreed to pay the prevailing wages as determined by the Department of Labor. That's at page 53 of their opening brief. The reason they can be required to pay both, that is to say scale and the prevailing wages as determined by the Department of Labor, is because that's the same thing. And the testimony below made it perfectly clear that that's the same thing. Schuster's testified very clearly that Schuster uses the term scale and prevailing wages interchangeably. When they use those terms interchangeably, they are promising their workers that they will pay scale and prevailing wages. So the question then comes down to what is scale and prevailing wages? Because there's a promise, we're going to pay you scale, we're going to pay prevailing wages, what does that mean? What it means as a matter of law is they are going to pay fringe benefits on overtime, because they admit that they're going to pay the prevailing wages as determined by the Department of Labor, the Commissioner of Labor. And then Mr. Tudor comes in, he's subpoenaed by Schuster, his testimony is both at the deposition stage and at the trial stage. I thought there was a factual disagreement about how the wages were determined, right? Don't they have some evidence saying that they were going to pay these wages not because, not tied to the statute, but rather because of the contract, because the party's agreement? Yes. It's not a one-sided record on that. Well, that's where we get to the issue of Schuster's as if this were a state-funded project. They agree that they're going to pay the prevailing wages as determined by the Department of Labor. They agree that they're going to pay scale. They agree that those are both the same thing. So then we come to the issue of what does that mean? What does it mean to pay prevailing wages as determined by the Department of Labor? And that's where Mr. Tudor comes in, who was subpoenaed as a representative of the state. He's in charge of the program that enforces prevailing wage law. And he comes in and says, the Department of Labor has always, at least since he's been there, which is 2010, has always required payment of fringe benefits on overtime. And Schuster itself has paid fringe benefits on overtime when they have performed Davis-Bacon Act projects. Davis-Bacon Act is, of course, the federal law. We have a little Davis-Bacon Act in Maryland. There is no reason, there's no case, no statute, no regulation that suggests that the little Davis-Bacon Act would be construed any differently than the federal Davis-Bacon Act. So Schuster knew that fringe wage projects. And when it went to Wyden Turner to raise this issue of, well, we're not paying fringe benefits on overtime, how did it convince Wyden Turner to let it slide? The way it convinced Wyden Turner to let it slide is by showing them an audit from the Department of Labor in 2011. And in that audit, Schuster was dinged, if you will, for not paying the compensation its employees were due. But Schuster was not caught for paying, for failing to pay, excuse me, fringe benefits on overtime on that state project. What do you, you know, what do you say to the statement in the manual that they're not subject to state law regarding the payment of prevailing wages or Davis-Bacon Act? I say exactly what Judge Schwann said in the Rule 50B motion. Yeah, what Judge Schwann said at the, it doesn't help you. I'm about to spill the beans on you. What Judge Schwann said was, all that means is that this project was not subject to the jurisdiction of the Department of Labor. Because the only, so the Department of Labor could not enforce it. This project was not subject to the whole statutory scheme of audits and enforcements by the Department of Labor. And that's exactly the way Judge Schwann interpreted that phrase. And it's the only way to harmonize it with everything else that's in this case, in which Schuster is promising to pay the prevailing wage law as determined by the Department of Labor. I mean, that's their opening brief at 53. So all that sentence means is the state can't come in and enforce it. So here's what's important about the state enforcing it or not enforcing it, and Schuster's argument on this point. When they go to Wyden-Turner, they understand that something's happening here. They're not paying fringe benefits on overtime. And Wyden-Turner raises the question, what does Schuster do? Schuster sends them an audit from 2011 in which they're not charged on a state project with failing to pay fringe benefits on overtime. Now, it's very interesting what happened here because at the summary judgment level, Judge Schwann had that information. But he said, well, he focused on the sentence, you know, this project is not subject to fringe benefits on overtime, excuse me, not subject to 2011, was it, where Schuster was not dinged for failing to pay fringe benefits on overtime. But what Judge Schwann did not know, and he should have, given the evidence most favorable to us, and he did note later at the 50B motion, is that Mr. Tudor explained that. Mr. Tudor testified that there was an error in the spreadsheet that the Department of Labor was using prior to 2012, that they then caught the error in the spreadsheet and they corrected it. Now, there's no question that testimony is in the record. It was in the record at both stages. But interestingly, my colleague does not mention that at all in their brief. In other words, the Department of Labor testimony in the person of Mr. Tudor was clearly and unequivocally that the Department of Labor has always, always required the payment of fringe benefits on all hours worked, including overtime. Why does that matter? I mean, isn't the question what the law requires? It's neither here nor there, unless it's something that Maryland courts would defer to. Do Maryland courts defer to PowerPoint presentations by employees? No, no. Maryland courts don't defer to PowerPoint presentations per se. But Mr. Tudor testified. He didn't just, this wasn't just somebody who came in and showed the PowerPoint. Mr. Tudor testified that this is the position of the Department of Labor and has always been the position of the Department of Labor. I don't recall seeing a place where it was kind of hinged to, you know, here's a determination that Maryland courts would defer to, right? Here's a regulation. Here's how we interpret the statute of language, etc. It's not to say he's wrong about how they've applied it, but his opinion is not necessarily the end-all be-all on what Maryland law requires. It might be highly relevant to the expectation of the parties, right, on unjust enrichment, but maybe not to the legal standard. Well, first of all, if it were his personal opinion, I would, of course, I would agree with the court. But he is speaking not in his personal capacity. This is not his personal opinion. He was subpoenaed as a representative of the particular program within the Department of Labor that enforces prevailing wage law. And he testified as a representative of the particular program within the Department of Labor that enforces prevailing wage law. And he testified that Maryland law, just like the federal law, just like the Davids-Bacon Act, requires the payment of fringe benefits on all hours worked. So he's not testifying in his personal capacity. And when he shows that slideshow, he's going around as a representative of the Department of Labor and teaching employers how to compute overtime. So first of all, he's testifying in his representative capacity. But secondly, federal courts, I respectfully suggest this court, should look to the federal interpretation of the corollary statute. If we look to the Davis-Bacon Act, because this is Maryland's Davis-Bacon Act, if we look to the Davis-Bacon Act, there's no question that fringe benefits are paid on overtime. Schuster itself admits and admitted in the record that he had paid fringe benefits on overtime in some 14 federal projects. So this court will look, and Maryland courts also will look, to federal authority as persuasive, where the statutes are essentially the same. There's no reason to think, based on anything that the state court has said, that the state court would interpret its little Davis-Bacon Act any differently. I mean, why wouldn't? There is no case, there is no statute, there is no regulation that would suggest that the Maryland court would not look to the federal interpretation as persuasive authority. As Mr. Tudor testified, they do. They do. The Department of Labor of Maryland also requires the payment of fringe benefits on overtime. And the only instance that Schuster points to, it's not a case, it's not a statute, it's not a regulation, the only thing Schuster points to to suggest the contrary is the fact that once they were audited, they weren't paying fringe benefits on overtime on a state case, and the Department of Labor didn't catch it. Mr. Tudor explained even that. That was an error in a spreadsheet, and regrettably, my colleague does not even mention that in that briefing. That was not the policy of the Department of Labor. Mr. Tudor's testimony was clear and unequivocal, that the Department of Labor has always required, always, for as long as Mr. Tudor has been in his position, since 2010, has always required the payment of fringe benefits on overtime. So for those reasons, whether we look at the fact that Schuster is waving around the S3 and posting it in every trailer and saying, we're going to pay these wages, we're going to pay scale, we're going to pay these wage rates, this hourly wage rate, and this fringe benefit rate, that's a promise arising out of the S3 itself to pay fringe benefits on overtime. If I may just conclude, 30 seconds, 15 seconds, Your Honor. That's a payment and the promise to pay scale, which is the equivalent of prevailing wages, which requires fringe benefits on overtime. Thank you. Thank you, counsel. Mr. Dahl. Thank you, Your Honor. Your Honor, I'd like to address really one issue, and it is a little bit of a complex issue, but an important issue, because I feel that, specifically, the Hillaby Cross-Country Settlements case may have been misunderstood by the court below and may have been somewhat inaccurately cited in the briefs before this court, specifically as to knowledge or appreciation. On knowledge and appreciation, timing matters. You have to know or appreciate at the time that you have an opportunity to return the benefit. Don't you even have that opportunity today? No. No, Your Honor. And Hill solves this problem. They said when the benefit is money, money wasn't conferred to us by the plaintiffs here. There's no requirement that a defendant necessarily have knowledge or appreciation of the benefit precisely at the time the benefit is conferred, because you can give back money any time. Money is movable. But there's a superscript next to that sentence that says, footnote 12. And footnote 12 solves the problem. Footnote 12 provides a counterexample, which defeats Apley's argument. It cites the classic unjust enrichment case of the house painter who pays the house when the person's away. That's a services contract, and it's a services contract that can't be easily returned. The added value of the home cannot be separated easily and returned to the house painter. Therefore, a court should not permit the house painter to recover. Even though you could pay the house painter, you can't strip off the paint and return the benefit. So too in our case. So knowledge and appreciation only works in this case. If whatever Schuster learned, and that's all assuming that what happens in prevailing wage land matters under the S3, is about timing. What Schuster has to have known for knowledge, right, is that it owed this money to the plaintiffs. No, no. It said it was receiving benefits without planning to pay the additional money. Otherwise, the house painter example reaches a different conclusion. So because one of the arguments in your brief is that the district improperly failed to instruct the jury that Schuster had to know it owed this money, you are no longer making that argument. We've made that argument in the brief, but the more salient point on jury instructions for this argument is not the part on element two, it's the part on element one, defining the benefit. That's where the confusion arose. Is the benefit the services provided, or is the benefit the money we received from somebody else, or the value we received as a result of the services provided? And Hill footnote 12 solves that problem. It says it's the services provided. You have to have an opportunity to say, whoa, I'm going to blow the whistle, stop work. I have a suspicion that we may owe more money, and I'm not willing to pay that money, so stop the work. And there's not sufficient evidence that we learned that in time, because both Amaya and Gonzalez were done on the project by the end of 2015, correct? 2015. Okay? And all of these events that we're looking at now are dated 2016 or later. Okay? Mr. Tudor admitted in his testimony, 4271, that Schuster would not have known following that audit, because he didn't call and tell Schuster that they were doing the law wrong. I do understand this argument, but this has been helpful to me clarifying which arguments you want to maintain about the jury instructions. Are you still arguing that the district court error by not instructing the jury as you requested that unjust enrichment would require bad faith by the defendant? Is that not on the table anymore? We're going to rest on the papers on that. I have a minute and three seconds left. But it's not in your papers. That's why I'm asking. Is that on appeal or not? I don't believe it is. I don't believe it is. Regardless, there's a PowerPoint presentation. The testimony was that Burns, Lori Burns, the CFO who supposedly attended this, that didn't occur until 2017. That's on pages 4300 of the joint appendix. But both appellees were off the project by that point. That's in their pay stubs sections, JA pages 5797 to 5820. The knowledge came too late to stop accepting the benefits to these appellees, and therefore it fails element two, even assuming that what Mr. Tudor believed was the law of land, even assuming, as I think this court must, that Ms. Burns heard that in 2017, but not until 2017. And therefore, the claim fails under element two, and this court should reverse under rule 50. And I'm out of time, and I thank you for your listening to me. All right, Mr. Posner. So I'm hearing for the first time that the precise timing of when Schuster learned that it was receiving a benefit unfairly matters. This is at page 306 of the opinion, is the, quote, the essence of the requirement that the defendant have knowledge or appreciation of the benefit is that the defendant have an opportunity to decline the benefit. They had an opportunity to decline the benefit of getting services without fully paying the money. The assumption that there's some difference between services and money is, I mean, a metaphysical difference, I suppose, but they're flip sides of the same coin. They got services without paying the money. It's the same, it's the same thing. Clearly, Schuster had the opportunity to decline the benefit by paying the workers after the fact. And it's a small point, but I think it's worth making anyway. My colleague says that Ms. Burns attended this presentation, this slide presentation by the Department of Labor in 2017. In fact, at the record of page 4299 to 4300, Ms. Burns testified that there were workers still on the project when she attended that presentation. And that's 2016. Again, I don't think the months or the year matters because as the court indicated, or asked, I should say, not to presume what the court's thinking, but as the court asked, couldn't they return the benefit now? And the answer is, of course, they could. Do you want to distinguish the painter when you're painting your house when you're out of town, hypothetical? You know, in terms of that as returning a benefit, I think the law in that sort of situation would, as Hill did in some respects, go off on the question of whether the painter was an officious intermeddler. I think that's the way we would have to analyze that because obviously, you don't strip the paint off the house. And if we go back to Hill, we go back to first principles and look at how the Maryland now Supreme Court described unjust enrichment, the question was, is there an opportunity to return the benefit? And is the person who's providing the benefit doing so pursuant to some legal or moral authority? So if the painter, the only way I can distinguish that painter example is the way Hill does, theoretically talking about whether the painter did this as an officious intermeddler, in which case there would be no obligation to decline the benefit, no opportunity to decline the benefit and no requirement to decline the benefit. So remember the basic facts of Hill, they're a little confusing, but we had a situation in which someone purchases, an owner of a house, puts a mortgage on the house, takes a loan out from a bank, and then takes a second loan out from a bank, pays off the first loan. And so that owner then sells, or I think the property descends to the daughter who's Hill. And for whatever reason, the bank and the settlement company get confused about whether the first loan has been paid off or the second loan has been paid off. And so they report incorrectly to the settlement company that there is no balance due on the loan. When that loan is later discovered, the new owners, by the new owner, his title company pays off the bank and then goes back to the settlement company and says, you guys should have caught this at the time. And so the settlement company ends up suing the new buyer, new owner of the home. And the court analyzes that as unjust enrichment and talks about whether there was some moral or legal obligation on the part of the settlement company to pay off the title. Counsel, let me ask you this. With respect to this second element of unjust enrichment, which was the awareness, is the question of the timing of the awareness or at what point the awareness came? It seems to me the opposing counsel wants to make that a question of law. And the question that I have is whether the timing of the awareness or when the awareness dawned would be more a factual question. But could you speak to that? Yes. Number one, I think it's absolutely a factual question. And the way you analyze that factual question is by asking whether there was an opportunity to decline the benefit. And in this case, where what Schuster received was services without full payment, they clearly had the opportunity, even today, to decline the benefit by paying the money. That was argued before the jury, wasn't it? Yes. All this was presented to the jury. Everything that we're talking about, I've listened carefully to the argument, but everything that we're talking about, including when awareness dawned and when there was an opportunity to decline the benefit and everything, all of that was extensively hashed out before the jury, wasn't it? Absolutely it was, Your Honor. That was the subject of my cross-examination of Lori Burns talking to her about when she learned that Schuster had received these services without paying fringe benefits on overtime. And when she attended the slideshow and so forth, it absolutely was hashed out. In many ways, that was the crux of the matter that was submitted to the trier of fact. It is indeed. And there was more than sufficient evidence for the trier of fact to determine that Schuster had the opportunity to decline the benefit, which means the second test of unjust enrichment. I just don't want to lose sight. And I see if I can just make one more sentence. I just don't want to lose sight of the fact that there was, in fact, a promise to pay scale slash prevailing wages in this case. And we should have been permitted to proceed in the alternative on that claim. Thank you. I see my time is up. Thank you. That last point you made goes to the third element, doesn't it? Whether it was unfair. Yes. Inequitability of it. Yes, it goes to inequitability, but it also supports the separate basis that we have for our cross appeal, which is not sure. I'm not sure you need to get there. It just seemed to me that what you're talking about in terms of the promise to pay scale wages in the light is a crucial element of the inequitability. I agree with that. You are the reason we want to get there, if I may. The reason we want to get there is damages. A violation of the Maryland wage payment collection law carries different and greater damages than we were allowed to recover below. So the reason we're pressing, I mean, just to be perfectly candid, the reason we're pressing the cross appeal is because there's a very substantial difference in the damages. All right. Thank you very much. If anyone has any further questions, we can keep you up there. Otherwise, we will adjourn court. This honorable court stands adjourned. Signe Dye, God save the United States, and this honorable court.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Allison J. Rushing